SAMUEL OSBORN, JR. *vs.* NATHANIEL M. JERNEGAN.

Dukes County.   Oct. 25, 1878. — March 3, 1879.   ENDICOTT & LORD, JJ., absent.

The plaintiff gave the defendant his promissory note, payable on demand, in consideration of the sale to him of five shares of stock in a railroad company, and on the same day the parties signed an agreement that the sale should be void, if the railroad should be sold under an execution then levied upon it, " or if the surrender of stock as now proposed and the settlement with the creditors according thereto, as now proposed and agreed, shall not be made within sixty days." At the time the note was given, an execution had been levied upon the property of the railroad company, and a plan had been partly carried out by which all the shares of stock were to be surrendered to trustees, who were to issue new stock to the creditors in payment of their debts. Within a month afterwards, the stockholders and the creditors had all signed agreements to carry out this plan, and the interest on the debts had been reckoned and the new stock issued; but the new stock was not actually delivered and the creditors paid until after the expiration of the sixty days. *Held*, that the contingency by which the sale was to become void had not happened; and that an action could be maintained on the note.

COLT, J.   This is an action on a promissory note, dated April 6, 1877, and payable on demand, given to the plaintiff, for five shares of stock in the Martha's Vineyard Railroad Company. The defence is, that, when the note was given, it was agreed between the parties, that, upon a contingency which has now happened, the stock should be taken back and the note given up.   The question is as to the construction of this agreement.

It appeared that the railroad company was then in failing circumstances.   An execution had been levied on its property, and the defendant, as a creditor of the corporation, had an interest in preserving its property from sale on execution, and from proceedings in bankruptcy.   A plan had been proposed for securing the creditors, and saving some interest in the property,

for the old shareholders. It required the surrender of all the stock to trustees, and the transfer to and acceptance of the same by the principal creditors in payment of their debts. Two written instruments had been drawn up, one to be signed by the stockholders, agreeing to surrender their stock, and the other by the creditors, agreeing to accept the same in satisfaction; but these papers, though partly executed, had not then been signed by all the stockholders, or all the creditors. It is evident that, in order to secure his interest as a creditor, the defendant bought the plaintiff's stock, and gave this note, thereby removing one obstacle in the way of completing the arrangement. At the same time, for the purpose of protecting himself in the event of its failure, the written agreement, the construction of which is in question, was made. By this agreement, dated April 6, 1877, the sale was to be void, the stock was to be given up, and the note returned, if, in the words of the agreement, " the railroad shall be sold on execution, as now attached and levied on ; or if the surrender of stock as now proposed, and the settlement with the creditors, according thereto, as now proposed and agreed, shall not be made within sixty days from the date hereof."

There was evidence tending to prove that, by the middle of April, the stockholders had all signed the agreement to surrender; that the creditors had signed the agreement prepared for them, and that the railroad corporation had assented to the proceedings, chosen the trustees; and promised to perform all that was required in the premises. The interest on the debts paid was reckoned up to May 1, and the new stock issued bore the same date; but the actual delivery of the stock, and the actual payments to the creditors, did not commence until June 20, and were mostly made in July, more than sixty days after the date of the note in suit and the agreement then made.

The plaintiff asked the court to rule, that, if nothing remained to be done but to transfer the stock, and pay the creditors according to the terms of the agreement between them, then the terms of the agreement between the plaintiff and defendant had been complied with, and the plaintiff had a right to recover on the note.

The judge declined so to rule, and ruled that the legal interpretation of the agreement was, that the actual payment and the

transfer of the stock to every creditor must be made within sixty days.  This instruction is in our opinion too strict and narrow It fails to give sufficient consideration to the situation of the parties, and to their intention and purpose, as ascertained by applying all the provisions of the contract to the subject-matter. It is that general intention which must govern the interpretation, even if in conflict with some word or phrase in the agreement. The contingency really contemplated by the parties, upon which the note was to be given up, was the levy of the execution within sixty days, or a failure to secure within that time the agreement of all the stockholders and creditors to the plan proposed, and not the mere failure within that time to perform the clerical duty of transferring the stock to the creditors, in accordance with a binding agreement seasonably made.

*Exceptions sustained.*

*J. Brown*, for the plaintiff.

*G. Marston*, for the defendant.