Brookings v. Scudder.

ROBERT S. BROOKINGS, EDWARD HIDDEN and
    ALBERT N. EDWARDS, Trustees Under Will of
    SAMUEL CUPPLES, v. C. R. SCUDDER, JAMES
    ROGERS and SAMUEL CUPPLES ENVELOPE
    COMPANY, Appellants.

In Banc, December 6, 1922.

1. **CONTRACT: Construction: Intention.**   Whether the signing and
    delivery of a written agreement by the vendor and vendee of
    certificates of the stock of a corporation, and the issuance and
    delivery of such certificates to a trustee in pursuance of its terms,
    constituted a conditional gift of the stock, a conditional sale, or
    an absolute sale with an option in the vendor to re-purchase, or
    whether they effected the execution of a profit-sharing contract
    merely, depends upon the intention of the parties, and this in-
    tention must be ascertained from the language of the writing it-
    self.   But in construing it neither the technical words in which
    it is phrased, nor the legal form in which it is cast, is necessarily
    controlling; the instrument as a whole must be considered in
    connection with the situation of the parties and the purposes they
    sought to accomplish through its execution.

2. ———: **Corporate Stock Issued to Valued Employee: Profit-Shar-
    ing Contract or Absolute Sale: Placed in Hands of Trustee: Sale
    or Assignment: Survival of Option to Repurchase.**   The president,
    owning two-thirds of the capital stock of a prosperous corpora-
    tion, and its vice-president, owning one-third, discussed the ques-
    tion of raising the salary of a valued employee who had long
    been in the service of the company, and concluded it would be
    better to give him an interest in the company rather than simply
    raise his salary.   Accordingly an agreement was drawn up,
    signed by both the president and said employee, dated in 1903, re-
    citing that the president had "sold and delivered" to the employee
    eighty shares of the stock of the company, for which the employee
    has "made and delivered" to the president "his promissory note
    for $8,000, payable on or before ten years after date," with in-
    terest at five per cent; that the certificate of stock had been in-
    dorsed by the employee and delivered to a named trustee, and "it
    is agreed that the certificate shall be held by said trustee" as
    "collateral security for the payment of said note" and also "subject
    to the provisions hereof" and to be "transferred by said trustee

as herein provided;" that whenever said employee "shall cease to be in the employ of said company" the president "shall have the option to repurchase said shares of stock," and in case he elects to repurchase, the trustee shall, upon the payment by the president to the employee of the book value of said shares, less the amount then unpaid on said note, indorse and deliver the said certificate to the president, and said employee "shall thereafter be discharged from all further liability upon said note;" but in case the president shall not elect to re-purchase said shares, then the trustee, upon payment to the president "of the full amount remaining unpaid upon said note," shall indorse and deliver the certificate to the employee; that whenever said employee "shall cease to be in the employ of said company," he shall be entitled, upon the delivery of an absolute assignment to the president of all his right and interest in said shares, to receive his said note and be discharged of all further liability thereon, and thereafter said president shall be the absolute owner of said shares and entitled to receive the certificate from the trustee; that the president agrees, "during the continuance of the employment by said company" of said employee and as often as shall be requested by said employee "prior to the maturity of said note or any extension of same, to extend said note or any extension of same" for a period of ten years after the date of such request; and that "all dividends declared or payable on said shares while said certificate remains in the hands of said trustee and while said note remains unpaid, or so much thereof as shall be necessary, shall be applied to the payment of interest due on said note, and any balance of dividends not needed to pay such interest shall be subject to the order" of the employee, but "interest on said note shall be payable only out of dividends paid on said shares while said certificate remains in the hands of said trustee." During the first ten-year period the employee received $14,200 in dividends on said eighty shares, and by applying a part of them to the payment of the note reduced its principal to, $1161.29, and thereafter made no further payments on account of either principal or interest. By 1917 the book value of the stock was $295.75 per share, and the employee had continued ever since the contract was made in the employ of the company, and without ceasing said employment he attempted to sell and assign said certificate to said vice-president for $23,666, although it was still in the hands of the trustee under said agreement. *Held*, that said contract, notwithstanding it recited at its outset that said president had "sold and delivered" said shares to said employee, was not an absolute sale of the stock, but simply a profit-sharing contract, entered into by said employee and the majority stock-

Brookings v. Scudder.

holder of the company for the benefit of the corporation, and auxiliary to or supplemental of the general contract of employment, securing to the employee a definite part of the net earnings of the company and investing him with such temporary qualified ownership of the eighty shares as enabled him to render the character of services desired in return for the benefits bestowed. *Held*, also, that if the employee had paid the entire principal of the note he would not thereby have acquired either the title to the stock or the right to its possession, since it would still have remained in the hands of the trustee subject to the contract provision giving to the president the right to his election, upon the termination of the employee's employment, to pay him in cash the accumulated earnings on the stock, or to cause the stock to be delivered to the employee in lieu thereof; and as the employee's share in the profits or enhanced value of the stock is determinable only when he ceases to be employed by the company, at which time the president is given the right to elect to pay him in cash the difference between the book value and the par value of the stock, or to sell him the stock, the employee had no right to assign or sell the stock. *Held*, also, that said option given to the president was not personal, but upon his death survived to his legal representatives; and as the employee by attempting to sell said stock terminated his employment, they have the right to exercise said option and elect to take the stock upon payment of its book value, less the amount that has been paid on the note.

*Held*, by HIGBEE, J., dissenting, that the option to re-purchase the stock or to surrender the note upon full payment was personal with the president, and did not survive to his legal representatives; and the employee, having been recognized as owner of the stock for sixteen years, both before and after the president's death; and having made partial payment of the note during the president's life and at his death tendered the balance and demanded the stock, he was clearly within his rights; and as the relation between him and the president was one of confidence and trust and therefore personal, and as the only restriction imposed upon his ownership of the stock was the president's right to re-purchase, and the contract said nothing about the survival of said option to his legal representatives, the judgment in this suit, brought by them, should be that they do not have the right to exercise said option, but that said employee has had a right to sell said stock ever since said president's death.

3. ———: ———: ———: ———: Restraint Upon Alienation: Survival of Option to Repurchase. If the contract by which the president of

Brookings v. Scudder.

a corporation sold and delivered to an employee of the company eighty shares of stock was a profit-sharing contract, ancillary to and supplemental of his general contract of employment, made for the purpose of securing to the employee a definite part of the earnings of the company in lieu of a direct increase in salary, said employee to have the dividends on said stock when declared, and his right to the book or enhanced value of the stock to be determinable when said employee ceased to be employed, when the president was to have the option to re-purchase the stock at its book value, less the amount then unpaid on a note given in payment thereof, or to deliver the stock to the employee upon his payment of the note, the question whether the contract was in restraint of alienation of the stock by the employee, and the question whether the option survived to the legal representatives of such president, have no place in the case.

*Held*, by HIGBEE, J., dissenting, that the contract between the president and the employee brought them into close personal relations establishing trust and confidence, and this being true the option to re-purchase the stock was a personal right or privilege of the president, and did not survive to his legal representatives, and upon the president's death the employee had full right to tender full payment of the note and demand delivery of the stock.

4. ———: ———: ———: ———: **Fraud on Other Stockholders.** A profit-sharing contract with an employee of a corporation, entered into by its president, who owned nearly two-thirds of its stock, with the advice and aid of its vice-president, who owned one-third, by which said employee, in lieu of an increase in salary, was to have the dividends on eighty shares issued to him, with an option in the president, when his employment ceased, to re-purchase the stock at its book value or surrender the stock on the payment of the note given in payment, cannot be held to have been a fraud upon the other stockholders, since the only remaining stockholder was the president's foster daughter who may at the time have owned a small number of shares and who knew of the contract and has never complained.

5. ———: ———: ———: ———: **Qualified Ownership of Stock: Sale: Surrender of Voting Power: Termination of Employment.** An employee, invested, by a profit-sharing contract, with a qualified ownership of certain capital stock of a corporation, during the time he shall be employed by it, in order, not only to provide him compensation from its earnings, but to enable him to serve it in the capacities of stockholder and director, is under an implied obligation to render efficient and loyal service in these capacities,

and to exercise them solely in its interest; and by attempting to sell and assign said stock, while his employment continues, and permitting said assignee to exercise the voting franchise conferred by the stock and thereby to wrest the control of the corporation from the majority stockholders, he abdicates his duty as a stockholder and elects to terminate his relations with the corporation; and as the contract provided for a settlement on the termination of the contract, a judgment for a settlement is proper. And the fact that, after attempting to assign said stock to another and surrendering the voting franchise conferred by it, said assignee issues to said employee another and different share and in pursuance to it he continues to act as director, does not alter the fact that by his own acts he has terminated his employment under the profit-sharing contract.

Appeal from St. Louis City Circuit Court.—*Hon. Victor H. Falkenhainer*, Judge.

AFFIRMED.

*Lehmann & Lehmann* for appellants.

(1) The contract was one of sale *in praesenti* of the stock by Cupples to Rogers. The considerations for the sale were the obligation assumed by the execution of Rogers's note, the payments thereon, and Rogers's continuation in the employment of the company. In re Desnoyers Shoe Co., 224 Fed. 372, 376. (2) There has been no breach of the contract by Rogers. (a) Rogers is still in the employment of the company. (b) Rogers being the owner of the stock had the right to authorize Scudder to vote the stock. Capen v. Garrison, 193 Mo. 342; 10 Cyc. 334; Blevins v. Riggs, 110 Ill. App. 37, 48; Bjornard v. Goodhue County Bank, 49 Minn. 483, 487. (c) The contract did not prohibit Rogers from assigning his interest in the stock to Scudder. (3) The trustees had no right to forfeit the contract and take to themselves the stock bought by Rogers. The contract does not give the trustees the right to forfeit the stock. Forfeitures are not favored and neither in law nor in equity will the right of forfeiture be given

unless the contract expressly so provides. Alberts v. Merchants Exchange, 140 Mo. App. 449; Studdard v. Wells, 120 Mo. 29; Gratz v. Scenic Railway Co., 165 Mo. 211, 217; Swofford Brothers v. Randolph, 151 Mo. App. 385, 398; Trendley v. Railroad, 241 Mo. 73, 96. (4) Even though Rogers has breached the contract the trustees cannot rescind it. Courts of equity will not rescind a contract for a breach thereof in the absence of fraud, mistake, or other independent grounds, of equitable jurisdiction, nor where there is another adequate remedy less drastic, nor in any case, unless there has been a complete failure of consideration. 9 C. J., 1181; Shafer v. Shafer, 190 S. W. 323; In re Desnoyers Shoe Co., 224 Fed. 376. (5) The option to Cupples was personal to him and could be exercised only by him. It ceased with his death and did not pass to his trustees or their assigns. Arkansas Smelting Co. v. Belden Co., 127 U. S. 379, 387; Delaware County v. Diebold Safe Co., 133 U. S. 473; Odell v. Wells, 171 N. Y. Supp. 349, 352; Redheffer v. Leathe, 15 Mo. App. 12; Hardy Implement Co. v. Iron Works, 129 Mo. 222; Moore v. Thompson, 93 Mo. App. 336, 347; Afflick v. Streeter, 125 Mo. App. 703; Boyken v. Campbell, 9 Mo. App. 495; Landsen v. McCarthy, 45 Mo. 106. (6) Where it appears from the nature of a contract that the rights under it may not be assigned, the contract is not made assignable merely because it provides that the privileges may be exercised by the parties or their assigns. Foster Woolen Co. v. Wollman, 87 Mo. App. 658; Wooster v. Crane Co., 73 N. J. 30; Montgomery v. De Picot, 153 Cal. 509; Jetter v. Scollan, 96 N. Y. Supp. 274; Pollack on Contracts (4 Ed.) 425. (7) An option is usually a personal privilege to be exercised only by him who holds the option. Newton v. Newton, 11 R. I. 390; Rease v. Kittle, 56 W. Va. 269, 278; Boyken v. Campbell, 9 Mo. App. 495; Myers v. Stone, 128 Iowa, 10; Sweezer v. Jones, 65 Iowa, 272; Bostwick v. Hess, 80 Ill. 138; Kadish v. Lyon, 229 Ill. 35; Wheeling Car Co. v. Elder, 170 Fed. 215. (2) If the contract

prohibits a sale by Rogers of his interest in the stock it is to that extent void as in restraint of trade. Fisher v. Bush, 35 Hun, 641; American v. Struthers, 131 U. S. 246; Steel v. Bankers Association, 148 Pac. 661; Moses v. Scott, 84 Ala. 608. (9) In so far as the contract gave Cupples an option to re-purchase the stock when Rogers's employment by the company ceased, it was against public policy as being detrimental to the interest of the other stockholders of the company. Timme v. Kopmeyer, 162 Wis. 571; Guernsey v. Cooke, 120 Mass. 501; Noyes v. Marsh, 123 Mass. 286; Noel v. Drake, 28 Kan. 265; Singers Bigger v. Young, 162 Fed. 82; West v. Camden, 135 U. S. 507; Odell v. Wells, 171 N. Y. Supp. 345; Wilbur v. Stoepel, 82 Mich. 344. (10) Any present stockholders may now object to the trustees exercising the option to re-purchase the Rogers stock. Odell v. Wells, 171 N. Y. Supp. 345, 351. (11) The legal and illegal portions of the contract are separable. 9 Cyc. 569; Pelz v. Eichle, 62 Mo. 171; Wright v. Railroad, 141 Mo. App. 519; Prestbury v. Fisher, 18 Mo. 50; Lowenstein v. McElroy, 181 Mo. App. 406; Rosenblatt v. Townsley, 73 Mo. 536. (12) Rogers had the right at any time to pay his note in full and get an absolute title to the stock. (13) A contract should not be interpreted to give one party an unfair advantage over another. Conqueror Zinc Co. v. Aetna Co., 152 Mo. App. 332; C. & E. I. Co. v. Carterville C. Co., 176 Mo. App. 407; McCartney v. Guardian Trust Co., 274 Mo. 224. A written contract should be construed most strongly against the party formulating the contract. Belch v. Scholtz, 171 Mo. App. 357; Interior Linseed Oil Co. v. Becker-Moore P. Co., 273 Mo. 433, 443.

*Jeffries & Corum* and *Jesse McDonald* for respondents.

(1) The contract did not constitute an absolute sale. Wright v. Crockett, 7 Mo. 125; 35 Cyc. 41; 26

Cyc. 1215; Halbert v. Halbert, 21 Mo. 277; Berry v. Berry, 31 Iowa, 415; Miles v. Miles, 168 Iowa, 153; Conkling v. City of Springfield, 39 Ill. 98; Siner v. Flatt, 177 Pac. 545; Stamm v. Easterly, 8 Pa. Dist. 330; Williams Estate, 11 Pa. St. 636; 13 C. J. 325; Philpot v. Gruninger, 14 Wall. 570; Simpson v. Van Langingham, 267 Mo. 286. (2) The contract has been breached by defendants. 15 C. J. 650; Powell v. Batchelor, 192 Mo. App. 67; McNamara v. Dyer, 176 S. W. 1101; Armstrong v. Henley, 182 Mo. App. 320; Laclede Power Co. v. Stillwell, 97 Mo. App. 258; Gibson v. Pub. Co., 28 Mo. App. 450, Murphy v. St. Louis, 8 Mo. App. 483; Lyle v. McCormack Harvesting Machine Co., 108 Wis. 81, 51 L. R. A. 906. (3) Plaintiffs are not seeking to enforce a forfeiture. Harrington v. Neville, 83 Mo. App. 589; Williams v. Maryland Glass Corp., 134 Md. 320; Lincoln Trust Co. v. Nathan, 175 Mo. 32; Lindeke v. Realty Co., 146 Fed. 630; United States v. Railroad Co., 186 Fed. 861; Cherokee Const. Co. v. Bishop, 86 Ark. 489; Callahan v. Shotwell, 60 Mo. 398; Farmers Trust Co. v. Galesburg, 133 U. S. 156; 9 C. J. 1181; Hayden v. Railroad, 222 Mo. 126. (4) The interest of Samuel Cupples in the contract passed to and is enforcible by plaintiffs. 21 L. R. A. (N. S.) 915; Siboni v. Kerkman, 1 Mees. & M. 423; Yerrington v. Greene, 7 R. I. 589, 84 Am. Dec. 578; Harrison v. Conlan, 10 Allen (Mass.) 85; 1 Corpus Juris, p. 181, par. 326; 18 Cyc. 239; Woerner American Law of Administration (2 Ed.) par. 328, p. 729; Bambrick v. Webster Groves Presbyterian Church, 53 'Mo. App. 225; Arkansas Smelting Co. v. Belding, 127 U. S. 379. (5) The contract is valid: (a) The contract is not against public policy. Douglas v. Aurora Daily News Co., 160 Ill. App. 506; Oregon R. & N. Co. v. Demaus, 181 Fed. 781; Bonta v. Gridley, 78 N. Y. Supp. 961; Strodl v. Farrish-Stafford Co., 130 N. Y. Supp. 35; Malcolmson v. Realty & Inv. Co., 139 N. Y. Supp. 405; Fremont Carriage Co. v. Thompson, 91 N. Y. 376. (b) The contract is not void

as in restraint of trade. Clark & Marshall on Corporations, p. 1732; Skrainka v. Scharringhausen, 8 Mo. App. 522. (6) To void a contract as against public policy the party seeking such voidance must place the other party *in statu quo.* Wiggins Ferry Co. v. Railroad, 73 Mo. 389; Whitwell v. Aurora, 139 Mo. App. 597; Tel. Co. v. Tel. Co., 236 Mo. 114, 136; Porter v. Gold Mining Co., 74 Pac. 938. (7) Defendants knew of, consented to and acquiesced in said contract and are estopped from repudiating it. Sauerherring v. Rueping, 119 N. W. 184; Jones v. Williams, 139 Mo. 1, 32; Fletcher, Cyc. on Corporations, p. 675, par. 473; Brooker v. Trust Co., 254 Mo. 125.

RAGLAND, C.—Shortly prior to July, 1903, the capital stock of the Samuel Cupples Envelope Company, a Missouri corporation, with its principal place of business in St. Louis, was $100,000, and its surplus, $150,000. A stock dividend was declared making the authorized capitalization $250,000, this amount equaling the net asset value of the company at that time, there being 2500 shares of the par value of $100 per share.

At the time of the increase of the capital stock Samuel Cupples was president and the defendant C. R. Scudder was vice-president and treasurer of the company; Cupples owned approximately two-thirds of the stock and Scudder one-third. The defendant James A. Rogers, and John J. Hamilton, James H. Hewitt and Frank M. Kimbark, had been in the service of the company a number of years and were valued employees. The question of raising their salaries was discussed between Cupples and Scudder; they came to the conclusion that it would be best, in Mr. Scudder's language, to "give these men an interest in the company, rather than just raise their salaries," and to that end they would "give them stock from which they could draw their dividends." Accordingly on July 9, 1903, Samuel Cupples entered into a contract with each of the employees just

named. The contracts were identical in terms, the one with defendant Rogers being as follows:

"St. Louis, Mo., July 9, 1903.

"This Instrument Witnesseth: That Samuel Cupples, first party, has this day sold and delivered to James A. Rogers, second party, eighty shares of stock of Samuel Cupples Envelope Company at the price of one hundred dollars per share, for which purchase price said second party has this day made and delivered to said first party his promissory note for eight thousand dollars, payable on or before ten years after date to the said first party with interest from date at the rate of five per cent per annum, payable semi-annually.

"It is hereby agreed that the certificate for said shares (which has this day been delivered to Albert N. Edwards, trustee, having been first endorsed to said trustee by said second party) shall be held by said trustee not only as collateral security for the payment of said note, but also subject to the provisions hereof, and transferred by said trustee as herein provided. Whenever said second party shall cease to be in the employ of said company, said first party shall have the option, at any time within ninety days thereafter, to re-purchase the said shares of stock, and in case said first party shall elect to so-re-purchase, the said trustee shall, upon the payment or legal tender, by said first party to said second party before the expiration of said ninety days, of the book value of said shares (to be determined as hereinafter provided) less the amount then unpaid upon said note, endorse and deliver the said certificate to said first party, who shall thereafter be the absolute owner thereof, and said second party shall thereafter be discharged from all further liability on said note; but in case said first party shall not within said ninety days elect to re-purchase said shares, and make said payment or tender, then said trustee shall, at any time thereafter, upon payment to said first party of the full amount then remaining unpaid upon said note, endorse and deliver said certificate to said second party.

"The book value aforesaid of said shares shall be the value of said shares as shown by the books of said company on the date of the last inventory taken preceding such re-purchase.

"Whenever said second party shall cease to be in the employ of said company, he, or his legal representatives, shall be entitled, upon the delivery to said first party of an absolute assignment, conveying to said first party all the right, title and interest of said second party in said shares, to receive his said note from said first party and thereafter said first party shall be the absolute owner of said shares and entitled to receive the said certificate from the said trustee and said second party shall be discharged from all further liability on said note.

"The said first party agrees, during the continuance of the employment by said company of said second party and as often as shall be requested by said second party not less than sixty nor more than ninety days prior to the maturity of said note or any extension of same, to from time to time extend said note or any extension of same, so as to defer the maturity of said note and make same payable on or before ten years after the date of such request.

"All dividends declared or payable on said shares while said certificate remains in the hands of said trustee and while said note remains unpaid, or so much thereof as shall be necessary, shall be applied to the payment of interest due on said note, and any balance of said dividends not needed to pay such interest shall be subject to the order of the second party. Interest on said note shall be payable only out of the dividends paid on said shares while said certificate remains in the hands of said trustee.

"Upon the death, disability or refusal to act of said trustee, said first party, his legal representatives or assigns shall have the power to appoint a successor in trust, who shall thereby be vested with all rights and

powers of said trustee and all acts of such successor shall be as valid and binding as the act of said original trustee in that behalf would have been.

"Said trustee shall not be liable for the default of any other person or for any omission to act hereunder, but only for his own willful misconduct.

"(In. triplicate).

"SAM CUPPLES.<br>"JAMES A. ROGERS.<br>"St. Louis, Mo., July 9th, 1903.

"I hereby accept the above and foregoing trust and acknowledge the receipt of stock Certificate No. 26, issued by Samuel Cupples Envelope Company for the above described shares of stock, to be held and transferred by me in accordance with the provisions of the above and foregoing agreement.

"(In triplicate).

"ALBERT N. EDWARDS, Trustee."

Contemporaneously with the execution of the contract a certificate for eighty shares of stock was duly issued to Rogers. Across the face of the certificate this notation was written in red ink: "This certificate is issued subject to the terms and conditions of the trust accepted by Albert N. Edwards, Trustee, and expressed in agreement dated July 9, 1903, between Samuel Cupples and James A. Rogers." The certificate was endorsed by Rogers to Edwards as trustee and it and a triplicate original of the agreement attached thereto were delivered to the trustee. At the same time Rogers executed his promissory note to Cupples according to the terms of the agreement. Under their several contracts Rogers, Hamilton and Hewitt each had eighty shares of stock and Kimbark had 200 shares. On April 19, 1910, Cupples turned over 100 shares to H. J. Snyder, another employee, on the same terms. One-third of the stock furnished these employees was taken from the stock dividend alloted to Scudder and two-thirds from that of Cupples.

After the acquisition of stock under their respective contracts Hamilton and Rogers voted at stockholders' meetings and served as directors of the corporation.

On April 19, 1910, Cupples and Scudder entered into a written agreement wherein it was agreed that in the event Cupples availed himself of the options to re-purchase the stock as provided in the contracts with Hamilton, Rogers, Hewitt and Snyder, he would at once deliver to Scudder one-third of the number of shares so re-acquired at the same price he, Cupples, paid for them; and that in the event he did not desire to avail himself of any such option when the contingency upon which it was to be exercised happened, Scudder should in his place have such option. Hamilton, Rogers, Hewitt and Snyder each endorsed on the contract his assent to its provisions. The contract with Kimbark had previously been rescinded by mutual agreement.

Samuel Cupples died January 6, 1912, and in his will made the plaintiffs, Robert S. Brookings, Edward Hidden and Albert N. Edwards, both executors and trustees thereunder. No specific mention was made in the will of the stock of the Samuel Cupples Envelope Company, owned by the testator, but title to it passed to the trustees as a part of his residuary estate.

In April, 1913, Hewitt's employment with the corporation terminated; thereupon the trustees under the will of Samuel Cupples paid the amount as provided in the contract with Hewitt, took up the stock and caused a certificate for one-third of it to be delivered to Scudder in accordance with the agreement between him and Cupples. In the latter part of 1917 or the early part of 1918 the same transactions were had with respect to Snyder's stock.

Dividends paid on each eighty shares of stock for the years 1903 to 1917 inclusive amounted to $14,240. The book value of the stock on December 13, 1917, was probably $23,666 or $295.75 per share. The book value as shown by the last inventory before the trial of this

cause in November, 1919, however, was $378.31 a share. On July 23, 1913, Rogers had by payments on the $8,000 note to Cupples reduced the principal to $1161.29. He made no further payments on account of either interest or principal after that date.

In December, 1917, the holdings of the defendant Scudder, in his own name and in the names of the immediate members of his family, were such that by the acquisition of 160 shares more he would have a majority of the stock of the Envelope Company. In order to obtain these additional shares he attempted to buy, and Hamilton and Rogers attempted to sell to him, the shares held by the trustees subject to the provisions of the several agreements of Hamilton and Rogers with Samuel Cupples. In execution of the plan to transfer the stock to him, Scudder took an assignment from Hamilton and one from Rogers and entered into a contract with each. The assignments were identical in terms as were the contracts. Rogers's assignment was as follows:

"St. Louis, Mo., December 13, 1917.

"For value received, the undersigned hereby transfers, assigns, and conveys unto C. R. Scudder, of St. Louis, Missouri, all right, title and interest of the undersigned in and to eighty shares of stock of the Samuel Cupples Envelope Company, certificate for which stock, No. 26, is now held by Albert N. Edwards, said C. R. Scudder being hereby authorized to receive and receipt for said certificate, also to vote said stock at any and all meetings of the stockholders of said company, and to receive and receipt for all dividends hereafter paid thereon. Executed in triplicate originals.

"J. A. ROGERS."

The contract with Rogers recited: That Rogers was the owner of eighty shares of the stock of the Envelope Company, held by Edwards; that Edwards claimed that Rogers was not the absolute owner thereof, but that said stock was subject to the provisions of the agreement dated July 9, 1903, between Rogers and Cupples; that

Edwards claimed that the trustees of Samuel Cupples were entitled to purchase said stock in the event that Rogers should cease to be in the employment of the Envelope Company; that Rogers denied the claim of Edwards, and asserted the right to the present possession of the stock, and denied that the stock was still subject to the terms of said contract, or that the trustees, or their assigns, had any right to purchase said stock; that there was a balance due on said stock of $1163.94 and interest; that Scudder desired to buy and Rogers desired to sell the stock; that Rogers did, by the agreement, sell the stock to Scudder, receiving therefor $23,666, evidenced by a note of Scudder to Rogers. The contract further provided: "It is understood, as between the parties hereto, that the certificate of said stock hereby conveyed is now in the hands of said Albert N. Edwards, and that said stock is sold subject to the rights, if any, the executors or trustees of the estate of said Samuel Cupples may have in said stock, by reason of said contract between said Rogers and said Cupples."

The contract further recited that there might be litigation respecting the right of Rogers to the stock, and provided that if the litigation should be determined adversly to the contention of Rogers the note given by Scudder should be cancelled; but if Rogers's contention should be upheld, the note given by Scudder should be paid and the stock should be delivered to him. The contract also provided that Scudder should bear the expenses of all litigation respecting the right to the possession or ownership of the stock.

In July, 1913, Hamilton and Rogers severally tendered the amounts unpaid on their respective $8,000 notes to the trustees under the will of Samuel Cupples, and also to Edwards as trustee under the contracts of July 9, 1903, and demanded the stock held by the latter under those agreements. The trustees offered to receive the money, but refused to deliver the stock. On January 29, 1917, Scudder wrote the trustees under the

will, inclosing copies of the assignments made to him by Hamilton and Rogers, offering to pay the balance due from them and requesting certificates for the stock. The trustees replied that Hamilton and Rogers by their attempted sales of the stock had breached the agreements under which the certificates thereof were held, that by reason of such breaches the trustees claimed the stock freed from the provisions of the trust agreements, and that they stood ready to pay Hamilton and Rogers such respective sums as were due them under the terms of the agreement. Letters of like import were addressed by the trustees to Hamilton and Rogers respectively.

In December, 1917, the board of directors of the Samuel Cupples Envelope Company consisted of Scudder, Hamilton, Rogers, Amelia Cupples Scudder and Jesse McDonald. Scudder was president, Rogers vice-president, and Hamilton, secretary and treasurer. On the day the assignments were executed by Hamilton and Rogers to Scudder, he transferred to each of them one share of his own stock, and they continued to serve as members of the board of directors and as officers as theretofore.

This suit has to do only with the eighty shares of stock that were put in the hands of the trustee under the agreement between Cupples and the defendant Rogers. The petition, after pleading the contract and averring the issuance and delivery to the trustee of the certificate of stock pursuant thereto and the subsequent attempted alienation thereof by the defendant Rogers, alleges that such attempted sale constituted a breach of the agreement. The relief sought is that the interests of Rogers and Scudder be cancelled, upon the payment to them by plaintiffs of whatever sums the defendant Rogers has heretofore paid on account of the $8,000 note, and that the defendant corporation be required to transfer said shares on its books to plaintiffs and issue them a certificate therefor.

In their answer and cross-bill defendants aver: (1) That if the agreement between Cupples and defendant

Rogers prohibited the alienation of the eighty shares of stock by the latter, which they deny, it was, and is, voidable, because an undue restraint on trade; (2) that the agreement, if correctly construed by plaintiffs, was, and is, a fraud upon the stockholders of the corporation, in putting Samuel Cupples (or his assignee, if assignable) in a position to profit by the retention or discharge of Rogers; and (3) that Samuel Cupples had merely a personal option to repurchase the shares which did not pass under the will to his personal representatives.

The court found the issues for the plaintiffs and by its decree cancelled the interests of defendants Scudder and Rogers in the eighty shares of stock, upon the payment by plaintiffs to defendant Rogers of $27,864.80, the book value of the stock as shown by the last inventory of the assets of the corporation, less the amount remaining unpaid on the $8,000 note of Rogers to Cupples, and directed the trustee, Edwards, to deliver the stock to plaintiffs. It further required plaintiffs to deliver one-third of such stock to defendant Scudder upon the payment by him to plaintiffs of said book value thereof.

From such judgment defendants appealed.

I. It is the contention of respondents' counsel that the issuance of the certificate of eighty shares of stock to defendant Rogers and its deposit with the trustee in accordance with the provisions of the writing executed by Cupples and Rogers constituted a conditional gift of the stock by the former to the latter.

Profit-Sharing Contract. Appellants take the position that there was an absolute sale of the stock, in which the title passed, with the reservation on the part of Cupples of a mere option to repurchase at a specified price, upon the termination of Rogers's employment. As appellants' other contentions are for the most part but corollaries of this main proposition, practically all the questions involved can be disposed of by determining the essential nature of the transaction had between Cupples and Rogers.

Whether the signing and delivery of the written agreement between Cupples and Rogers and the issuance and delivery of the stock to the trustee pursuant to its terms constituted a conditional gift, a conditional sale, or an absolute sale with an option on the part of the vendor to re-purchase, or whether they effected the execution of a profit-sharing contract merely, depends upon the intention of the parties. That intention must of course be ascertained from the language of the writing itself. In construing it, however, neither the technical words in which it is phrased, nor the legal form in which it is cast, is necessarily controlling. The instrument as a whole should be considered in connection with the situation of the parties and the purpose they sought to accomplish through its execution. [Stockton Savings & Loan Soc. v. Purvis, 112 Cal. 236; Osborn v. Jernegan, 126 Mass. 362; Pratt v. Prouty, 104 Iowa, 419.]

In July, 1903, Cupples and Scudder were the owners of the stock of the defendant corporation in the proportion of two-thirds and one-third respectively. Their enterprise had evidently prospered as a stock dividend of 150 per cent to cover its accumulated net earnings had just been declared. Rogers and four others had been in the employ of the corporation a number of years and their services were considered valuable. With a view of retaining such services and securing them indefinitely for the future, Cupples and Scudder considered whether they would merely raise the salaries of these employees, or give them an interest in the company. They finally decided to do the latter, and the contract with Rogers and similar contracts with the four others resulted.

Looking to the contract itself we find that while it recites that Cupples has "sold and delivered" to Rogers eighty shares of stock at the price of $100 per share, other provisions wholly relieve Rogers of any obligation to pay the purchase price as represented by the $8,000 note. The interest is payable only out of dividends on

the stock and the note, as to the principal, is renewable at the end of ten-year periods, during Rogers's employment, indefinitely. And whenever Rogers terminates his employment he is entitled, upon the release of his interest in the shares of stock, to demand his note.

On the other hand the contract secures to Rogers the part of the net earnings of the company that is represented by eighty shares of its capital stock. A part of those earnings is set apart and paid to the shareholders at stated intervals as dividends. These, less an amount equal to interest on the par value of the stock at five per cent per annum, it provides Rogers may receive as and when they are paid. The part of the earnings not paid out of the dividends remains in the hands of the corporation and is measured by the enhanced value of the stock. Rogers' share of these profits is not determinable until he ceases to be employed by the defendant corporation. That is the time fixed by the contract for its ascertainment. At that time Cupples (or his legal representative) is required to account to Rogers for the accumulated earnings on eighty shares of stock, as shown by the difference between their par value and their book value. This he may do, either by paying Rogers such difference in cash, or by selling him the stock at par. And he may elect which method of settlement he will employ.

Appellants insist that even if the contract does not require Rogers to pay any part of what is therein denominated the purchase price of the stock, it is clearly implied that he may do so. That fact, however, in no way gives character to the transaction. Such payment, if made, would not in any respect accelerate the discharge of the contract through performance; if Rogers had paid the entire $8,000, the principal of the note, he would not have thereby acquired either the title to the stock, or the right to its possession. It would still remain in the hands of the trustee subject to the provision of the contract giving Cupples the right at his election, upon the

termination of Rogers's employment, to pay him in cash the accumulated earnings on the stock as shown by the book value, or to cause the stock to be delivered to him in lieu thereof. Rogers did in fact pay at different times prior to July 23, 1913, all but $1161.29 of the $8,000 represented by the note. During the previous ten-year period he had received $14,240 in dividends, and he evidently applied a large part of the dividends to the payment of the principal of the note, thereby reducing the interest payments and increasing the proportions of the dividends that became absolutely his own. Instead of dissipating his part of the dividends, he put it all in the stock, thereby making it the repository of his earnings under the contract; because he knew that at the termination of his employment whatever he had paid on the principal of the note would be returned to him, or else applied to the payment of the purchase price of the stock, if Cupples elected to deliver him the stock instead of paying him cash.

It seems clear that the agreement under consideration was simply a profit-sharing contract. It was entered into between the majority stockholder of the Samuel Cupples Envelope Company and one of the company's employees; it was made for the benefit of the corporation and the corporation accepted its fruits; it was auxiliary to or supplemental of, the general contract of employment between the corporation and its employee. It secured to Rogers, the employee, a definite part of the net earnings of the company and invested him with such temporary qualified ownership of eighty shares of the stock as enabled him to render the character of services required in return for the benefits bestowed. The substantial ownership of the stock, however, remained with Cupples. [Williams v. Maryland Glass Corp., 134 Md. 320.]

II. If the conclusions announced in the preceding paragraph are correct, then the questions relating to

restraint upon alienation, and to the survival in Cupples's legal representatives of the option given him under the contract, fall out of the case. As to the

**Restraint on Alienation: Survival of Option.** illegality of the contract on the ground that it was a fraud upon stockholders who did not assent thereto, it is sufficient to say that there were no such stockholders. At the time the contract was entered into Cupples and Scudder were the only stockholders, with the exception possibly of Mrs. A. C. Scudder, a foster daughter of Cupples,

**Fraud on Other Stockholders.** who may at that time have owned a small number of shares. Scudder not only knew of the making of the contract, but advised and aided in its procurement. In addition to that he subsequently obtained from Cupples an agreement to deliver to him, Scudder, one-third of the shares when released from the contract. After the institution of this suit Scudder transferred twenty shares of stock to each of two sons and they thereupon under his direction entered a protest against that provision in the contract which gave Cupples "an option on certain shares of stock . . . to be exercised in the event said Rogers . . . should cease to be in the employ of the Company." This was merely Scudder protesting his own handiwork. As far as Mrs. A. C. Scudder is concerned she has long known of the provisions of the contract and never objected thereto.

III. Plaintiffs allege in their petition "that . . . Rogers has, by his attempted alienation of said shares of stock, wholly repudiated said agreement between himself and . . . Cupples, and has breached the same," and it is on these allegations, essentially, that they base their claim for the relief prayed. Appellants contend

**Breach of Contract.** that even if Rogers did breach the contract, which they deny, he did not by reason thereof forfeit his rights under it. In their brief respondents say that Rogers breached the contract by voluntarily trying to put it out of his power to perform

his obligations thereunder.  In what respect he sought to put it out of his power to perform his contract, according to their contentions, they do not make clear.  Rogers could not have put it out of his power to restore the stock to Cupples's estate upon the cessation of his employment, however much he tried, simply because he had never been invested with any such antecedent power.  That matter was entirely in the hands of the trustee.  If at the time Rogers ceased to be in the employ of the company the representatives of the estate chose to pay him the accumulated earnings on the stock, the trustee would thereupon deliver the stock to the estate; otherwise, he would deliver it to Rogers.  The latter could not sell the stock because he had neither title nor possession; what interest he did have in it was purely personal and not assignable.  He could, of course, have assigned merely his contingent interest in the earnings of the stock, but this was not what he attempted to do.

It is manifest that Rogers was invested with *quasi-*ownership of the stock in controversy, during the time he should be employed by the corporation, in order, not only to provide him with compensation from its earnings, but to enable him to serve the corporation

**Termination of Employment.**

in the capacities of stockholder and director.  There was an implied obligation on his part to render efficient and loyal service in these capacities.  The powers of stockholder and director which he obtained through the contract he held as a personal trust, and he was bound to exercise them solely in the interest of the corporation.  In abdicating his duty as a stockholder and permitting Scudder to exercise the voting franchise conferred by the stock, and in having made himself wholly subservient to Scudder in the latter's efforts to wrest control of the corporation from the majority stockholders, it is unquestionably true that Rogers ceased to give the corporation the character of service required of him by his contract.  [West v. Camden, 135 U. S. 507; Guernsey v. Cook, 120 Mass. 501.]

Whatever view may be entertained with respect to the nature of Rogers's breach, if any, of the contract and the consequences attendant thereupon, it is clear that he elected to terminate, and did terminate his relations with the corporation under the contract. Since December 13, 1917, Scudder has been voting the eighty shares of stock at stockholders' meetings, and presumably since that time has been receiving the dividends therefrom. Rogers, it is true, has continued to be an ostensible stockholder and has continued to act in the capacity of director, but since the date just mentioned he has based his membership in the corporation, not on the qualified ownership of eighty shares of stock as provided by the contract, but on the one share sold or furnished him by Scudder. It is plain, therefore, that he has ceased to be employed within the purview of the contract. This conclusion is not negatived by the fact that he has continued in the service of the corporation under different arrangements—a new contract of hiring.

The judgment *nisi* decreed a settlement and disposition of the stock according to the provision of the contract as herein construed. However, the last inventory taken by the defendant corporation next before the entry of the decree was made the basis of the settlement, instead of the one last preceding December 13, 1917. Defendant Rogers benefited thereby to the extent of nearly $2,000 and of course does not complain of the judgment in that respect.

In accordance with the views herein expressed the judgment should be affirmed. It is so ordered. *Small, C.,* concurs; *Brown, C.,* absent.

PER CURIAM:—The foregoing opinion by RAGLAND, C., is hereby adopted as the opinion of the court. All of the judges concur, except *Woodson, C. J.,* and *Higbee, J.,* who dissents in opinion filed.

HIGBEE, J. (dissenting).—The contract of July 9, 1903, is what it purports to be. Cupples sold and de-

livered to Rogers eighty shares of the stock; Cupples reserved an option to re-purchase the stock on the condition stipulated, that is, when Rogers should cease to be in the employ of the company Cupples should have the option within ninety days thereafter to re-purchase the stock, but if, within ninety days, he should not exercise his option, on payment of the $8,000 note, the trustee would endorse and deliver the shares of stock to Rogers.

On the execution of this contract, the note was also executed and the shares delivered to Rogers who endorsed them to the trustee. Rogers from that time on was a director and voted his stock, and from that time on was, and still is, an employee and officer of the company. He was recognized during all these years as owner of this stock. He has never breached the contract. Cupples died January 6, 1912. He recognized Rogers's right to pay the note. He received payments on the note. Up to July, 1913, Rogers had paid on the principle of this note $6836.06. He tendered the trustee the balance, $1163.94, and all interest, and demanded the shares of stock, which were refused.

This contract brought Cupples and Rogers into close personal relations involving trust and confidence. The Supreme Court of the United States, in Arkansas Smelting Co. v. Belden Co., 127 U. S. 379, quoted the familiar phrase of Lord Denmann: "You have the right to the benefit you anticipated from the character, credit and substance of the party with whom you contract." The same court further said: "The rule upon this subject, as applicable to the case at bar, is well expressed in a recent English treatise: 'Rights arising out of a contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.'"

This being true, the option to re-purchase the stock was a personal right or privilege. The contract does

not stipulate that the heirs, executors, administrators or assigns of Cupples might re-purchase the stock if Rogers should quit the employment of the company. Had he quit its service on Cupples's death, it would not have been a breach of the contract, for the relation being personal, his contract did not oblige him to continue that relation with strangers to the contract. The option being personal, terminated with the death of Cupples. Rogers continued in the service, was recognized as a stockholder and voted his stock, was continuously elected a director and officer and at the institution of this suit, was and still is vice-president of the corporation.

Moreover, if Rogers had quit the service, Cupples might not have desired to re-purchase the stock. It might have depreciated or he might have been willing to part company with Rogers. Rogers did not agree to allow a stranger to exercise the option. Hence, when Rogers, after Cupples's death, tendered full payment of the note and demanded delivery of the stock, he was clearly within his rights and the court erred in cancelling the contract and declaring it forfeited.

Ownership of the stock, which was recognized for sixteen years, implies the right of sale. The only restriction on Rogers's ownership imposed by the contract was the option Cupples had to re-purchase in case Rogers quit the service. There is no stipulation that the contract would be forfeited if he contracted to sell his interest. By his payments on the note, he had a large beneficial interest in the stock. Forfeitures are abhorred. Neither in law nor in equity will a forfeiture be allowed unless the contract expressly so provides. The right to forfeit the contract because of an offer to sell cannot be found or read into the contract. Rogers's right to delivery of the stock was complete before he offered to sell it to Scudder. In my opinion the trial court erred in its judgment, and it should be reversed with directions to enter judgment for the appellants on payment of the balance due on the note. I therefore respectfully dissent from the learned opinion of the Commissioner.